UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHILLIP S. STENGER,

        Plaintiff,

                                       Case No. 14-cv-10999

v.

                                       HON. MARK A. GOLDSMITH

DAVID K. FREEMAN, et al.,

        Defendants.
_____/

**OPINION AND ORDER
(1) OVERRULING DEFENDANT'S OBJECTIONS (Dkt. 65); (2) ACCEPTING THE
REPORT AND RECOMMENDATION DATED AUGUST 4, 2015 (Dkt. 61); AND (3)
GRANTING PLAINTIFF'S MOTION TO ENFORCE THE SETTLEMENT
AGREEMENT (Dkt. 48)**

**I. INTRODUCTION**

On March 7, 2014, Plaintiff Phillip S. Stenger initiated the present action against Defendants David K. Freeman, Dale W. Toler, Jedburgh Group International, Inc., and C.I. Solar Solutions, Inc., seeking to recover $1.5 million in funds fraudulently transferred in connection with an alleged Ponzi scheme (Dkt. 1). On July 10, 2014, Toler and Freeman executed a settlement agreement, individually and on behalf of CI Solar and Jedburgh Group, respectively. Toler committed suicide on July 31, 2014. See Suggestion of Death (Dkt. 33); Freeman Declaration ¶ 23 (Dkt. 65-2). Thereafter, Plaintiff filed a motion to enforce the settlement agreement against Freeman (Dkt. 48).

This matter is before the Court on the Report and Recommendation ("R&R") issued by Magistrate Judge R. Steven Whalen on August 4, 2015 (Dkt. 61), which recommends granting Plaintiff's motion. Freeman filed objections to the R&R (Dkt. 65), to which Plaintiff filed a

response (Dkt. 66). The Court reviews de novo those portions of the R&R to which a specific objection has been made. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

The factual background and legal standards governing this case have been sufficiently set forth by the Magistrate Judge in his R&R and need not be repeated here. For the reasons explained fully below, the Court overrules Freeman's objections, accepts the recommendation contained in the R&R, and grants Plaintiff's motion to enforce the settlement agreement.

## II. ANALYSIS

### A. Freeman's First Objection — Ambiguity of Section 2.3 of the Settlement Agreement

Section 2.3 of the settlement agreement provides, in pertinent part, that:

> In consideration of the mutual covenants, promises and releases in this Agreement, within fourteen (14) days of receipt by the Receiver of a copy of this Agreement fully executed by all Defendants, there shall be paid, by or on behalf of Defendants, to the Receiver and/or his attorneys, the amount of One Million Five Hundred Thousand US Dollars ($1,500,000) in certified funds.

R&R at 4-5; Settlement Agreement at 3 (cm/ecf page) (Dkt. 65-3).

The Magistrate Judge determined that a plain reading of this section unambiguously holds all Defendants responsible for paying the settlement amount. Id. at 6. In particular, the Magistrate Judge concluded that the plain language of "by or on behalf of Defendants," which includes both the use of the plural "Defendants" and the disjunctive conjunction "or," imposed joint liability on Defendants to pay the settlement amount. Id. at 6-7.

Freeman, on the other hand, contends that he was not obligated to pay any portion of the settlement amount, because section 2.3 is clearly ambiguous. See Def. Objs. at 13-14. Freeman first notes that this section could have been written with a more definitive statement concerning joint and several liability. Id. at 13 (suggesting the inclusion of "independently, jointly and

severally liable" language in the agreement). Freeman then argues that extrinsic evidence supports his position that he was under no obligation to pay the settlement amount. See id. at 14-15. According to Freeman, section 2.3 should be interpreted as an "agreement that the settlement payment would be made 'by' Mr. Toler 'on behalf of' the other Defendants." Id. at 15.

In response, Plaintiff argues that the parties' settlement agreement is unambiguous. According to Plaintiff, the language of section 2.3 clearly allocates "responsibility for payment to both Defendants," and it "is not susceptible to more than one interpretation." Pl. Resp. at 11 (emphasis in original).

Upon de novo review, the Court agrees with the Magistrate Judge's conclusion that section 2.3 cannot be fairly read as providing for anything other than joint and several liability of all the Defendants. Because Freeman has not demonstrated any ambiguity in that provision, or any other defense to enforcement of the settlement agreement, the Court will grant the motion to enforce the settlement.

In resolving this motion, certain principles are undisputed. The Court possesses the inherent power to the enforce terms of a settlement agreement. Brock v. Scheuner Corp., 841 F.2d 151, 154 (6th Cir. 1988). A settlement agreement is a type of contract, and, therefore, questions about its formation and enforceability are governed by state contract law. Universal Settlements Int'l, Inc. v. Nat'l Viatical, Inc., 568 F. App'x 398, 401 n.2 (6th Cir. 2014) (analyzing the terms of a settlement agreement under Michigan law); accord Cogent Solutions Grp., LLC v. Hyalogic, LLC, 712 F.3d 305, 309 (6th Cir. 2013).

Under Michigan law, the application of which no party disputes, the Court "must enforce the terms of the settlement agreement as written, 'interpreting the unambiguous language in its plain and easily understood sense.'" Hidrofiltros, de Mexico, S.A. de C.V. v. Rexair, Inc., 355

3

F.3d 927, 930 (6th Cir. 2004) (quoting Gelman Scis., Inc. v. Fidelity & Cas. Co. of New York, 572 N.W.2d 617, 623 (Mich. 1998)); see also Old Life Ins. Co. of Am. v. Garcia, 411 F.3d 605, 613 (6th Cir. 2005) ("An unambiguous contract is not open to construction and must be enforced as written."); Reardon v. Kelly Servs., Inc., 210 F. App'x 456, 459 n.4 (6th Cir. 2006) ("[A] fundamental tenet of our jurisprudence is that unambiguous contracts are not open to judicial construction and must be enforced as written[.]" (quoting Rory v. Cont'l Ins. Co., 703 N.W.2d 23, 30-31 (Mich. 2005)). The test for ambiguity under Michigan law is whether a term "is equally susceptible to more than a single meaning." RBS Citizens Bank, N.A. v. Purther, 22 F. Supp. 3d 747, 752 (E.D. Mich. 2014) (quoting Choates v. Bastian Bros., Inc., 741 N.W.2d 539, 543 (Mich. Ct. App. 2007)).

In this case, the plain and ordinary reading of the relevant portion of section 2.3 – "there shall be paid, by or on behalf of Defendants, to the Receiver and/or his attorneys, the amount of One Million Five Hundred Thousand US Dollars ($1,500,000) in certified funds" – is susceptible to only one meaning: that all Defendants would be jointly and severally responsible for payment. Based on this language, the obligee of such an undertaking could only have understood that all the obligors were making a promise that they were all legally responsible for making sure the obligee would be paid. The natural reading is that the obligors were promising that either they would all pay, or they would make sure that someone paid on their behalf. The parties' language that the obligation would be paid "by or on behalf of Defendants" does not, in any way, suggest that only one Defendant would be legally responsible for payment. While the language would allow for different mechanics of payment – e.g., through one check by one Defendant for the total amount or several checks from multiple Defendants – nothing in the language suggests that some Defendants would not be legally responsible for the obligation at all. And nothing in the

4

language chosen by the parties supports Freeman's interpretation that Toler would be the sole source for the funding of the payment.

As the Magistrate Judge notes, the parties could have easily drafted section 2.3 in such a manner as to make clear that Toler had the sole obligation to make the required payment. See R&R at 7 n.3 ("Had the parties wished to give Mr. Toler sole and complete responsibility for paying the settlement amount, and to relieve Mr. Freeman of any financial liability, it would have been easy enough to make that explicit in the written Agreement."). The parties' failure to insert such language confirms the correctness of concluding that the language they did choose "fairly admits" of only one interpretation. See 51382 Gratiot Ave. Holdings, LLC v. Chesterfield Dev. Co., LLC, 835 F. Supp. 2d 384, 391 (E.D. Mich. 2011) ("If a contract, however inartfully worded or clumsily arranged, fairly admits of but one interpretation it may not be said to be ambiguous or, indeed, fatally unclear." (brackets omitted)).

Because section 2.3 is clear and unambiguous, the Court "may not consider extrinsic evidence of the parties' intent to vary the meaning of a contract that is clear and unambiguous." 51382 Gratiot Ave. Holdings, LLC, 835 F. Supp. 2d at 391 (citing Burkhardt v. Bailey, 680 N.W.2d 453, 464 (Mich. Ct. App. 2004)); cf. Macomb Interceptor Drain Drainage Dist. v. Kilpatrick, 896 F. Supp. 2d 650, 659 (E.D. Mich. 2012) ("Where a court concludes, as a matter of law, that a contract is ambiguous, extrinsic evidence may be admissible for interpretive purposes."). Therefore, the Court rejects Freeman's request that an evidentiary hearing be held.

Accordingly, the Court concludes that, under the clear and unambiguous language of section 2.3, Freeman is jointly and severally liable for paying the amount specified in the settlement agreement, and overrules his first objection.

**B. Freeman's Second and Third Objections — Mutual and Unilateral Mistake Based on Fraud**

In the R&R, the Magistrate Judge concluded that the settlement agreement could not be rescinded on the basis of mutual mistake, because even if the parties expected that Toler was solely responsible for paying the settlement amount, such an expectation was actually "a prediction as to a future occurrence or non-occurrence." R&R at 8. The Magistrate Judge also concluded that the settlement agreement could not be rescinded on the basis of a unilateral mistake, because Plaintiff did not know of and conceal a mistake. Id. at 8-9.

Freeman objects to the Magistrate Judge's conclusions, arguing that Toler's allegedly fraudulent misrepresentations resulted in either a mutual or unilateral mistake. Def. Objs. at 16. According to Freeman, each party "understood that the settlement agreement would be made 'by' Mr. Toler 'on behalf of' the other Defendants." Def. Objs. at 18 (stating that "the existing fact of Mr. Toler's access to the $1.5 Million settlement amount [ ] was the fundamental precept upon which the settlement was based." (emphasis added)). In particular, Freeman contends that Toler fraudulently misrepresented his access, ability, and willingness to pay the settlement amount, and such misrepresentations related to existing facts, not future occurrences, resulting in a mutual mistake. See id. at 18 n.3. Freeman also argues that, because of Toler's fraudulent misrepresentations, the settlement agreement cannot be enforced against Freeman on the basis of a unilateral mistake. See Def. Objs. at 16, 18.

In response, Plaintiff argues that there was no mutual mistake for two reasons: (i) Freeman's alleged mistake relates to an expectation, not an existing fact; and (ii) even if there was a mistake of fact, it was not shared by Plaintiff, i.e., it was not mutual. Pl. Resp. at 13. Plaintiff further argues that there is no basis for applying the "unilateral mistake" doctrine because there is no clear and convincing evidence that Plaintiff committed any fraud or inequitable conduct. Id. at 13-14.

The Court agrees with the Magistrate Judge and overrules Freeman's objections. "A valid settlement agreement can only be set aside for fraud or mutual mistake of fact." Guy v. Lexington-Fayette Urban Cnty. Gov't, 57 F. App'x 217, 224 (6th Cir. 2003); Windham v. Morris, 121 N.W.2d 479, 481-482 (Mich. 1963) ("Generally, rescission of a contract will not lie except for mutual mistake or unilateral mistake induced by fraud."). Absent any evidence of fraud, the Court must enforce the terms of the settlement agreement. See In re Draves Trust, 828 N.W.2d 83, 94 (Mich. Ct. App. 2012) (per curiam) ("Courts are bound to enforce settlement agreements absent evidence such as fraud or duress."); Plamondon v. Plamondon, 583 N.W.2d 245, 247 (Mich. Ct. App. 1998) ("Absent a showing of . . . fraud . . . plaintiff has failed to demonstrate grounds to set aside the settlement agreement."); Thompkins v. Brown, No. 09-028713-NO, 2014 WL 4055808, at *2 (Mich. Ct. App. Aug. 14, 2014) ("Plaintiff could have presented evidence of . . . fraud . . in an attempt to show that the settlement agreement should not have been enforceable. She failed to do so.").

In the present case, Freeman's arguments regarding mutual and unilateral mistake are necessarily premised on Toler's alleged fraud – i.e., that he "did not have the money he claimed" – and, as a result, Toler had neither the ability nor the intention to pay the settlement amount. Def. Objs. at 18 and n.3. However, Freeman has failed to provide any evidence to suggest that Toler did not, in fact, have access to money in the amount specified in the settlement agreement. Nor has he presented any evidence that Toler made any statement that he would pay the obligation without any intention of honoring that statement. Aside from Freeman's unsubstantiated claims to the contrary, there is no evidence of fraud in this case, and, therefore, the Court is unwilling to depart from the clear and unambiguous terms of the settlement agreement.

Furthermore, if fraud is to vitiate a contract, it must have been perpetrated by the party seeking to enforce the contract. Komraus Plumbing & Heating, Inc. v. Cadillac Sands Motel, Inc., 195 N.W.2d 865, 868 (Mich. 1972) (rescission of a contract may be warranted for fraud committed "by the part[y] seeking to enforce the contract"); Casey v. Auto Owners Ins. Co., 729 N.W.2d 277, 285 (Mich. Ct. App. 2006) ("To obtain reformation, a plaintiff must prove a mutual mistake of fact, or mistake on one side and fraud on the other, by clear and convincing evidence.").

Here, there is no suggestion that Plaintiff perpetrated any fraud or knew of any mistake on Freeman's part. Even if Plaintiff knew that it was Toler's intention to pay the full amount, there is no allegation or substantiation that Plaintiff knew that Toler had announced an intention to assume sole legal responsibility for the total payment. Because it is not alleged, much less substantiated, that Plaintiff engaged in any culpable conduct or had any knowledge of any mistake by Freeman, there is no basis for barring Plaintiff from enforcing the settlement agreement.

Accordingly, the Court overrules Freeman's second and third objections.

### III. CONCLUSION

For the reasons stated above, the Court overrules Defendant Freeman's objections (Dkt. 65), accepts the recommendation contained in the R&R (Dkt. 61), and grants Plaintiff's motion to enforce the settlement agreement against Defendant Freeman (Dkt. 48).

SO ORDERED.

Date: September 23, 2015  s/Mark A. Goldsmith
Detroit, Michigan  MARK A. GOLDSMITH
United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 23, 2015.

                                                   s/Carrie Haddon
                                                   Case Manager